*Hodge*, for appellant.
*R. T. Baker*, for appellees.

---

EDWARD H. COONS, &c., *v.* GEO. W. COONS, EXOR., &c.

**Wills—Executor Demands Payment in Gold—Legal Tender—Aid of Chancellor—Construing Will.**

The question as to the right of the executor to demand of the devisees payment in gold has been settled, and he has no right to demand payment in anything else than legal tender.

**Same—Usual Payments.**

The executor insists that the words "with usual payments" mean such payments as were usual at the time of the death of the testator. The devisees contend that these payments are to be regulated by the sale of land at the date of the bill. Held, That the intention of the devisor will control the decision of the question.

**Same—Time at Which Will Takes Effect.**

A will shall be construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.

**Same—Interest.**

When payments are given upon property, either by will or deed, the ordinary meaning attached to such language would be, that the payments were to bear no interest.

**Same—Election Between Devisees.**

Where devises are made in the alternative in a will, and it appears that the party to whom the devise is made, must accept the one or the other but not enjoy both, then an election can be made.

**Same—Rejection of Will.**

The devisee in a will may reject its provisions, but when he does so, his rights under it are gone.

APPEAL FROM FAYETTE CIRCUIT COURT.

January 17, 1872.

OPINION OF THE COURT BY JUDGE PRYOR:

George A. Coons, as the executor of the will of Joshua Coons, deceased, and in his own right, filed the present petition in equity asking the aid of the chancellor in construing the will of his father. The devisees are all made defendants and are before the court. The question as to the right of the executor to demand of the devisees payment in gold for the amount that they may have to pay on the land devised to them by their father, has been recently settled by the supreme court, and the executor has no right to demand payment in anything else than the currency of the country, known as legal tender bills, and this, perhaps, would have been the just and equitable settlement of the question as between the devisees, regardless of the decision referred to. The devisor gives to his two sons, Edward and William, a tract of land each, and in the distribution of the estate, Edward is to be charged to him at $55 per acre, and William's at $60, and in the language of the will they are to take the land *with the usual payments.* The will was written and executed by the devisor in the year 1854, and he died in February, 1869. The executor insists that the words, with the usual payments, mean that these two devisees

are to have the land upon such payments as were usually made in the purchase of land, in the vicinity of the devisor's home, at the time of his death. The proof shows that at the date of the execution of the will, in 1854, the usual payments made by the vendees of land were one-third in hand, and the balance in one and two equal annual payments, *and that at the death of the devisor, land sales were generally made for cash, or one-third down and the balance in one and two years with interest from date.* These two devisees say that their payments are to be regulated by the sales of land made at the date of the will. The intention of the devisors will control the decision of this question. By section 16, Revised Statutes, volume 2, page 461, "A will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." This statute does not control the chancellor when endeavoring to ascertain the intention of the testator from the will itself. The devisor, when he executed this will, evidently desired and intended that these two sons, as well as his son Joshua, should have time given them in which to pay what might be owing by them on the land devised. He knew at the time this will was written and at the date of its execution what were the usual payments on land, viz., one-third down and the balance in one and two years without interest. He was not then anticipating the time when land at such prices would be sold for cash, or upon payments with interest from the date of the purchase, if so, there would have been no necessity for giving to these sons the usual payments on land. The thought never entered the mind of this devisor that by the provisions of this will his sons would be required to pay cash for this property, and such a construction would be a violation of his intention. This view of the case is sustained by the devise to his son Joshua. He had given to Edward and William smaller tracts of land than to Joshua, and as Joshua might perhaps have more money to pay than his two brothers he required him to make four annual payments, viz., in one, two, three and four years from the time of his death. When he used the word payments, as applicable to the devise to either of his sons, he did not intend that these payments, whether in one, two, three or four years, or in *usual payments,* should bear interest. When payments are given upon property either by will or deed, the ordinary meaning attached to such language would be,

that the payments were to bear no interest, and if the devisor had intended otherwise there could have been found the word interest as well as that of payment, in the will. At the time of the execution of this will there was no such intention on the part of the devisor, as would require his sons to pay the cash for this land at his death, or interest upon the payments. The devisees must either accept the provisions of the will in their favor, or reject the devisor's bounty. The doctrine of election can not apply to a case like this. These devisees have no right in this property except such as are acquired by the will. The will itself gives to the devisees no right of choice as between the land, and its value in money. There is no legal or equitable right to this property vested in the devisees, independently of the will. The devisor doubtless, by placing a valuation on this land, did so, for the purpose of equalizing his children in the distribution of his estate, and for the purpose of preventing any trouble between his children upon that question after his death. It may be that the land is less valuable than the price fixed upon by the devisor, but this was his property he was devising. His children were the objects of his bounty, and in determining the interest they should each have in his estate he saw proper to charge the devisees a fixed price for this land, and the chancellor has no power to alter this provision of his will by giving other property in lieu of it. There are no inconsistent rights in this will as far as it applies to the appellants. Where devises are made in the alternative in a will, and it appears that the party to whom the devise is made, must accept the one or the otner, but not enjoy both, then an election can be made, or in cases where the devisee has some right independent of the will, but in this case to permit the election would be in effect determining that in no case is a devisee competent to accept the provisions of a will, but may reject such provisions, and still claim under the will, and obtain the value of the specific devise on other property than that devised. The parties may reject the provisions of this will, but when they do so, their rights under it are gone. Story's Equity, volume 2, page 335, upon this subject says: "Election in the case of will is the obligation imposed upon a party to choose between two inconsistent or alienative rights or claims, in case there is a clear intention of the testator that he should enjoy both * * * of election * * * a plurality of gifts or rights with an intention express or implied of the party who has the right to control one or both, that one should be a

substitute for the other.  The party who is to take, has a choice but can not enjoy the benefits of both."  This rule has no application to the present case and no right of election exists with the appellants.  The court below should render no additional judgment against these parties who are indebted for the land, until it is made to appear how much they will have to pay to the other devisees by reference to the master.

The judgment of the court below is reversed and cause remanded for further proceedings not inconsistent with this opinion.

*Darnaby, Kinkead & Buckner, for appellants.*
*Breckinridge & Buckner, Buford, J. D. Hunt, for appellees.*